**In re Martin LERNER, Debtor.**

**MIDLANTIC NATIONAL BANK, Plaintiff,**

v.

**Martin LERNER, Defendant.**

**Bankruptcy No. 893–82413–20. Adv. No. 893–8564–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

March 6, 1995.

Steven Taitz, Taitz, Bernard & Esteve, Patchogue, NY, for plaintiff.

Gary Ettelman, Ettelman & Hochheiser, P.C., Garden City, NY, for debtor/defendant.

Andrew M. Thaler, Chapter 7 Trustee, Goldman, Horowitz & Cherno, Garden City, NY.

Howard J. Wunderlich, Central Islip, NY, for trustee.

## DECISION AND ORDER DENYING MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court[1] is a motion ("Motion") by Martin Lerner, the debtor-defendant ("Lerner") for summary judgment and dismissal of the complaint on the grounds that there are no triable issues of fact to be determined. Plaintiff Midlantic National Bank ("Midlantic") opposed the Motion by filing a cross-motion for summary judgment ("Cross–Motion"). Both motions were made pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

For the reasons set forth below, Lerner's Motion for summary judgment is DENIED and Midlantic's Cross–Motion for summary judgment is DENIED.

### RELEVANT FACTS

On or about July 23, 1986, the defendant Martin Lerner and his wife, Diane Lerner ("Lerners") applied for and received a home equity line of credit from Midlantic in the maximum principal sum of $200,000.00 ("Midlantic Equity Mortgage"). A security interest by way of a mortgage that would encumber their residence at 2 Timber Road, Montville, New Jersey was given ("Residence"). The mortgage was recorded on or about August 18, 1986 in the Morris County Clerk's office.

Interested in refinancing their existing mortgage debt, the Lerners applied to First Morris Bank ("First Morris") for a mortgage loan in the principal sum of $200,000.00 ("First Morris Mortgage"). Additionally, the Lerners applied for a home equity line of credit in the maximum principal amount of $200,000.00 ("First Morris Equity"). The application process commenced on or about July, 1987 and culminated with a closing of both loans on August 21, 1987.

Both loans were to be secured with the Lerners execution of mortgages against their Residence. The First Morris Mortgage was to be secured by a first mortgage and the First Morris Equity was to be secured by a second mortgage. The Midlantic Equity Mortgage, already an existing lien on the Residence was to be paid off and satisfied of record at the First Morris closing. First Morris was to obtain and maintain its first and second priority positions as agreed to. First Morris did not agree to be subordinated to any other liens.

For purposes of the impending First Morris closing, Morris Handler ("Handler"), the Lerners' attorney, requested and received a

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (K) of title 28.

pay-off letter from Midlantic. Approximately $201,144.35 was necessary to satisfy the Midlantic Equity Mortgage. If the monies were received in person the day of closing, rather than by overnight courier or over the weekend, the *per diem* rate of interest could be saved and the pay-off figure would be lower.

The scenario that was to follow leaves this Court with serious questions about the credibility of the parties involved, and the conduct and quiescence of the borrowers, the attorneys, and lending institutions.

On August 21, 1987, the closing took place. The allegation is that Morris Handler represented the Lerners for the clos*ing* (emphasis added to denote singular) of the First Morris Mortgage and the Lerners represented themselves for the First Morris Equity closing. Pursuant to the pay-off letter, Mr. Handler prepared a transmittal letter dated August 21, 1987 to be delivered to Midlantic National Bank and had two (2) checks drawn in a sum sufficient to pay the mortgage in full. The letter is attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment as Exhibit "C" which also contains an Affidavit of Morris Handler, sworn to January 18, 1995.

The August 21, 1987 letter provides:

*August 21, 1987*

*Midlantic National Bank North*
*Capital Line Center*
*P.O. Box 4050*
*Paterson, New Jersey 07509*

*Attention: Equity Line Mortgage*

*Re: Mortgagor: Martin Lerner and Diane Lerner*
*Mortgage No.: 11100–04375–9*
*Premises: 2 Timber Road, Montville, New Jersey*

*To Whom It May Concern:*
*Pursuant to my telephone conversation with your office, please find a check in the sum of $201,144.35 which represents payment in full of the above mortgage.*
*Kindly send me the mortgage duly endorsed for cancellation, the current tax bill, and any other relevant documents as soon as possible.*

*If you should have any questions, please contact the undersigned.*
*Very truly yours, -*
*MORRIS HANDLER*
*MH:SH*
*Enclosure*

Mr. Handler's Affidavit states:
*It was agreed at closing that my client, Martin Lerner, would hand deliver the payoff checks to Midlantic in order to save three days interest. I placed the transmittal letter and checks in an envelope at the conclusion of the closings and handed the same to Mr. Lerner for delivery that day to Midlantic.*

Affidavit of Morris Handler, Esq., sworn to on January 18 1995 at ¶ 12.

The Application of Debtor–Defendant Martin Lerner, by his attorney Gary Ettelman, dated December 16, 1994 in support of his Motion narrates the following:

*(g) Shortly after the closing of the First Morris Loans, Midlantic received a payment or payments in the sum of Two Hundred One Thousand Thirty Three Dollars and Twenty One Cents ($200,133.21) which was applied to the Lerner's account, and as a result thereof, the balance on the Midlantic Home Equity Line was reduced to zero, however, the account was not closed, nor was a satisfaction of mortgage given. Accordingly, the Midlantic Home Equity Line remained open, and the mortgage securing it remained of record.*

*(h) Subsequent to the pay-down of the Midlantic Home Equity Line, and subsequent to the closing of the First Morris Loans, the Lerners continued to borrow against the Midlantic Home Equity Line, and as a result thereof in or about November, 1991 there was an outstanding principal balance on the Midlantic Home Equity Line in the sum of approximately Two Hundred Thousand Dollars ($200,000.00).*

Application of Gary Ettelman, Esq., dated December 16, 1994 at ¶¶ g, h.

On or about November, 1991, the Lerners defaulted in their payments to First Morris and foreclosure proceedings were commenced on or about March 27, 1992 in the

Superior Court of New Jersey. It was at this time that the parties learned that the Midlantic Mortgage was still a lien of record. Midlantic filed a cross-claim and counter-claim to foreclose its mortgage. At the time Midlantic's debt had risen from "$0" to $188,298.90.

A Stipulation of Settlement between First Morris Bank and Midlantic National Bank was entered December 29, 1993[2] in the Superior Court of New Jersey.

## DISCUSSION

11 U.S.C. section 523(a) provides:

*(a) A discharge ... does not discharge an individual debtor from any debt— ...*

   *(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—*

   *(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ....*

11 U.S.C. § 523(a)(2)(A) (1995).

Under Fed.R.Civ.P. 56(c) summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The fact that both parties have moved for summary judgment does not in and of itself say that there are no genuine issues of material fact. In this instance, both parties have failed to meet their burden as to their entitlement to judgment as a matter of law. Reasonable minds could differ in this case with respect to the evidence that has been presented by way of affidavits and supporting exhibits that will not allow this Court to rule on the pleadings. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12.

This Court must question Mr. Lerner's intent, motives, and representations when he:

(1) applied for the refinancing with First Morris;

(2) agreed to allow those mortgages to take a first and second priority;

(3) retained Morris Handler to represent him with respect to one loan when there was a simultaneous transaction involving the exact same people;

(4) *volunteered* (emphasis added) to personally deliver the envelope from the August 21, 1987 closing so that he could save approximately $110–$150 in *per diem* interest; and

(5) continued to draw on the line of credit previously given by Midlantic that was to be satisfied and closed after the August 21, 1987 closing.

With respect to Mr. Handler's actions:

(1) why allow a client to personally deliver a transmittal letter with pay-off checks in full satisfaction for an outstanding indebtedness to a banking institution;

(2) why not follow up with either Mr. Lerner to ensure he delivered the entire envelope or follow up with the bank to determine how much time would be needed for the bank to negotiate those checks and then forward a satisfaction?

The Court further asks: what happened to the contents of the envelope? A bank officer from Midlantic acknowledges that the checks were received but cannot find the August 21, 1987 letter. Perhaps it was removed. The bank's records do reflect a credit of $201,033.21 on August 24, 1987.

   *10. I have reviewed the file for this account, and that file does not contain a copy of the letter dated August 21, 1987, allegedly given by Morris Handler to Martin Lerner for delivery to Midlantic.*

   *11. In addition, I cannot find any notation in that file that this letter was ever received by Midlantic.*

   .     .     .     .     .

---

**2.** By filing a complaint on December 10, 1993, Midlantic commenced the instant adversary proceeding. By filing a complaint on July 26, 1993, First Morris commenced an adversary proceed-

ing and was assigned case number 893–8340–20. First Morris withdrew the adversary proceeding on October 14, 1994.

*16. The payment history indicates that Midlantic processed a payment of $201,033.21 on August 24, 1987.*

Affidavit of Zorian Lasowsky, an officer and Vice President of Midlantic National Bank, sworn to on January 11, 1995, ¶¶ 10, 11, 16.

This raises questions as to Midlantic's banking policies and administrative procedures. Mr. Handler's affidavit states that Midlantic provided him with a pay-off letter on August 18, 1987 (Handler Affidavit, ¶ 6). However, this letter has not been produced and Mr. Lasowsky's affidavit does not even reference it even though he states that bank files contain various writings inclusive of workpapers, memoranda, and correspondence sent and received by Midlantic (Zakowsky Affidavit, ¶ 6).

This Court's attention is drawn to "correspondence sent." Query? A pay-off letter is requested and received by the mortgagor's attorney from a bank. A bank receives a lump sum payment equivalent to the balance of an account and credits it to the account which now reflects a "$0" balance. Time goes by and this account is accessed again for thousands of dollars.

At oral argument, Mr. Ettelman suggested to this Court that Mr. Lerner did not possess sufficient knowledge concerning Midlantic's policies to have been able to form the requisite intent to deceive knowing that Midlantic would rely on his representations (February 9, 1995 Transcript, p. 7). This Court has serious questions that cannot be answered from the pleadings provided.[3] Did Mr. Lerner possess just enough knowledge and manifest just enough wide-eyed innocence that would allow him to maneuver through the refinancing transaction, further allowing him unfettered access to thousands of dollars? Mr. Lerner did knowingly continue to draw on the account.

For all of the questions that have arisen from the pleadings, and the answers that cannot be provided, summary judgment is DENIED. In light of the errors in judgment that this Court perceives the parties to

have exercised, it is suggested that settlement negotiations be explored.

All parties and their counsel are directed to appear at a final pre-trial conference on May 16, 1995, at 9:30 a.m., at which time a trial date will be given if necessary.

**SO ORDERED.**

---

**3.** The Court is unable to find an affidavit from Martin Lerner. The application in support of the motion for summary judgment was graciously provided by Gary Ettelman, debtor's attorney.